UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 07-30517 (LMW) |
| LISA M. BOSTICK, | ) | CHAPTER | 7 |
| DEBTOR. | ) | | |
| DIANA G. ADAMS, UNITED STATES TRUSTEE FOR REGION 2, | ) | ADV. PRO. NO. | 08-3018 |
| PLAINTIFF | ) | DOC. I.D. NO. | 11 |
| vs. | ) | | |
| LISA M. BOSTICK, | ) | | |
| DEFENDANT. | ) | | |

## APPEARANCES

| | |
|---|---|
| Lisa M. Bostick<br>53 Rock Street<br>New Haven, CT  06511 | Debtor/Defendant, *pro se*[1] |
| Holley L. Claiborn, Esq.<br>Office of the United States Trustee<br>The Giaimo Federal Building<br>150 Court Street, Room 302<br>New Haven, CT  06510 | Counsel for the United States Trustee |

---

[1]    The above-referenced debtor (the "Debtor") is *pro se* in this adversary proceeding but is represented by counsel in the bankruptcy case.

**MEMORANDUM OF DECISION AND ORDER**
**RE: UNITED STATES TRUSTEE'S MOTION FOR DEFAULT JUDGMENT**

Lorraine Murphy Weil, United States Bankruptcy Judge

Before the court is the United States Trustee's (the "UST") Motion for Default Judgment (A.P. Doc. I.D. No. 11, the "Motion")[2] seeking entry of a judgment denying the Debtor a discharge in this chapter 7 case pursuant to 11 U.S.C. § 727(a). This court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b) and that certain order dated September 21, 1984 of this District (Daly, C.J.).[3]

## I. BACKGROUND

### A. The Chapter 7 and Chapter 13 Cases

The Debtor commenced this case by the filing of a chapter 13 petition on March 8, 2007. (*See* Case Doc. I.D. No. 1.) Included with her petition were her schedules and statement of affairs. (*See id*.) Her schedules were amended on September 17, 2007. (*See* Case Doc. I.D. No. 24.) As of the petition date, the Debtor's schedules (as amended) showed: real property assets with a stated value of $120,000.00; personal property assets with a stated value of $29,700.00; secured claims in the aggregate stated amount of $139,832.00; no unsecured priority claims; general unsecured claims in the aggregate stated amount of $36,394.00; current monthly income for the Debtor of $4,006.50; and current monthly expenditures for the Debtor of $3,107.00. (*See* Case Doc. I.D. Nos. 1, 24.)

---

[2] References herein to the docket of this adversary case appear in the following form: "A.P. Doc. I.D. No. ___." References herein to the docket of this chapter 7 case and/or the chapter 13 case from which it was converted appear in the following form: "Case Doc. I.D. No. ___."

[3] That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . . ."

- 2 -

The Debtor filed a proposed chapter 13 plan on March 8, 2007. (*See* Case Doc. I.D. No. 2.) That plan proposed monthly payments to the Debtor's secured creditors but none to the Debtor's unsecured creditors. (*See id.*) The chapter 13 meeting of creditors held pursuant to Bankruptcy Code § 341 (the "Chapter 13 Meeting") was held on April 26, 2007. (*See* Case Docket Entry for 4/28/2007.)[4] The Debtor filed an amended proposed chapter 13 plan on May 30, 2007. (*See* Case Doc. I.D. No. 23.) In addition to payments to secured creditors, that plan proposed to pay the Debtor's unsecured creditors in full (with interest). (*See id.*)

On October 10, 2007, the chapter 13 trustee (the "Chapter 13 Trustee") filed a motion (the "Conversion Motion") to convert the case to a case under chapter 7. (*See* Case Doc. I.D. No. 26.) The Conversion Motion alleged: "Upon information and believe [sic] the debtor dissipated the assets of the estate [i.e., the Lottery Winnings (as hereafter defined)] and has not adequately accounted for the money and is no longer in a position to make a lump sum payment [and] . . . it would be in the best interest of creditors to convert this case to one under Chapter 7." (*Id.* ¶¶ 8-9.) The Conversion Motion came on for a hearing on November 15, 2007. Both the Chapter 13 Trustee and the UST appeared at that hearing but the Debtor did not appear to defend. (*See* Oral Record of 11/15/2007 hearing at 11:57:50 *et seq.*) On a finding of "cause," the court orally granted the Conversion Motion (*id.* at 11:59:01 *et seq.*) and an order converting the case to chapter 7 entered on November 19, 2007 (*see* Case Doc. I.D. No. 29).

---

[4] A copy of a transcript (the "First Transcript") of the Chapter 13 Meeting is annexed to the Motion. The Chapter 13 Meeting will be discussed more fully below.

The chapter 7 meeting of creditors pursuant to Bankruptcy Code § 341 (the "Chapter 7 Meeting")[5] was held on January 25, 2008. (*See* Case Docket entry for 1/28/2008.) On April 29, 2008, the chapter 7 trustee (the "Chapter 7 Trustee") filed a notice that no distribution would be made to creditors in this case. (*See* Case Doc. I.D. No. 49.)

**B.     The Adversary Proceeding**

The Complaint was timely filed by the UST on February 15, 2008. (*See* A.P. Doc. I.D. No. 1, the "Complaint.") A summons was issued on February 21, 2008 (*see* A.P. Doc. I.D. No. 3) and duly was served along with the Complaint upon the Debtor on the same day (*see* A.P. Doc. I.D. No. 6). The Debtor has neither filed an appearance, pled or otherwise defended in this adversary proceeding. The UST filed and duly served upon the Debtor a motion for default on April 1, 2008. (*See* A.P. Doc. I.D. No. 8.) The Clerk entered default herein against the Debtor on April 4, 2008. (*See* A.P. Doc. I.D. No. 9.) Notice of the default duly was served on the Debtor on April 6, 2008. (*See* A.P. Doc. I.D. No. 10.)

The Motion was filed on May 7, 2008. (*See* A.P. Doc. I.D. No. 11.) The Motion was set down for a hearing on May 21, 2008. (*See* A.P. Doc. I.D. No. 12.) A notice of such hearing and a

---

[5] A copy of a transcript (the "Second Transcript") of the Chapter 7 Meeting is annexed to the Motion. The Chapter 7 Meeting will be discussed more fully below.

Attached to the Motion are the following:

   a.   Affidavit of Holley L. Claiborn in Support of United States Trustee's Motion for Default Judgment (the "Affidavit");

   b.   Military Status Report;

   c.   First Transcript; and

   d.   Second Transcript

copy of the Motion duly were served upon the Debtor on May 9, 2008.  (*See* A.P. Doc. I.D. No. 13.) The hearing on the Motion was held as scheduled on May 21, 2008.  Counsel for the UST appeared but the Debtor did not.  At the request of counsel for the UST, copies of bank statements of the Debtor were admitted under seal in lieu of attaching them to the Motion.  (*See* Oral Record of 5/21/2008 hearing at 2:47:27 *et seq.*)  At the conclusion of the hearing, the court took the matter under advisement pending this decision.  On August 4, 2008, the court issued an Order Requiring Briefing.  (*See* A.P. Doc. I.D. No. 17.)  That order required the parties to brief the following issue:

> whether Section 727(a)(2)(B) applies to . . . [the fact scenario where the subject property was acquired by the debtor postpetition but preconversion] in cases filed after the effective date of the Bankruptcy Reform Act of 1994 [the "1994 Act"] which clarified that (with certain exceptions not relevant here) only prepetition property of the debtor remains property of the estate after conversion from chapter 13 to chapter 7.  *See* 11 U.S.C. § 348(f)(1)(A).  *Cf. Baker v. Rank (In re Baker),* 154 F.3d 534 (5th Cir. 1998) (discharge denied in a case filed in 1990 where court determined that property acquired postpetition remained property of the chapter 7 case on conversion from chapter 13).

(A.P. Doc. I.D. No. 17.)  Only the UST filed a responsive brief.  (*See* A.P. Doc. I.D. No. 19.)

## II.  **FACTS**

Four days after the petition date, on March 12, 2007, the Debtor won $100,000.00 through the CASH 5 Connecticut Lottery.  (*See* First Transcript at 4-5; Complaint ¶ 16.)  The Debtor deposited her net winnings of $70,298.82 (the "Lottery Winnings") into her People's Bank savings account (the "Savings Account") on March 14, 2007.  (*See* Complaint ¶ 17; *see also* Savings Account Statement for 3/13/2007 to 4/11/2007.)  The Debtor intermittently transferred some of those funds to her People's Bank checking account (the "Checking Account") throughout the following months.  (*See*, e.g., Checking Account Statement for 3/13/2007 to 4/11/2007.)  On March 15, 2007, the Debtor spent $2,000.00 at DJ World in Hamden, Connecticut.  (*See id.*)  On March 16, 2007,

- 5 -

the Debtor spent almost another $2,000.00 on a Carnival Cruise vacation to the Bahamas. (*See* Checking Account Statement.) The Debtor also wrote a check noted with the word "Investment" made out to Charlene Reid in the amount of $8,000.00 on April 3, 2007.[6] (*See id*.) The Debtor continued to expend her winnings on various items, and by April 11, 2007, the Debtor had $45,100.51 of the Lottery Winnings left in the Savings Account. (*See* Savings Account Statement.)

On April 26, 2007, the Debtor appeared and testified under oath before the Chapter 13 Trustee at the Chapter 13 Meeting. (*See* First Transcript.) Just prior to that Meeting, the Debtor told the Chapter 13 Trustee about the Lottery Winnings. (*See id*. at 4.) Under oath, the Debtor testified to the same winnings, the net value received after taxes, and the approximate $37,000.00 then remaining in the Savings Account. (*See id*. at 6.) The Debtor further testified that she had bought stock (the "Stock") in People's United Financial, Inc. with $12,000.00 of the Lottery Winnings. (*See id.* at 7; Complaint ¶¶ 31, 34.) During the Chapter 13 Meeting, the Chapter 13 Trustee instructed the Debtor not to use the remaining Lottery Winnings as that money would be used to fund her chapter 13 plan. (*See id*. at 7-8.)

Although the Debtor acknowledged the instruction from the Chapter 13 Trustee and subsequently filed an amended chapter 13 plan which would have paid her unsecured claims in full (*see* Case Doc. I.D. No. 23), the Debtor dissipated the remaining Lottery Winnings over the next few months. On September 19, 2007, the Chapter 13 Trustee was informed that the Debtor would be unable to make a lump sum payment under her amended plan because the Lottery Winnings had been almost entirely spent. (*See* Oral Record of 11/15/07 hearing at 11:58:38 *et. seq*.) As discussed above, the Chapter 13 Trustee then moved to convert the Debtor's case to chapter 7 without response

---

[6] A copy of the check, check 142, is included in the Checking Account Statement.

or objection from the Debtor. (*See* Case Doc. I.D. No. 26.)  When the court granted the Conversion Motion, Michael J. Daly, Esq. became the Chapter 7 Trustee.

At the Chapter 7 Meeting, the Debtor appeared and testified before the Chapter 7 Trustee. (*See* Second Transcript.)  Under oath, she testified again that she had won $100,000.00 (gross) in the lottery, had received approximately $70,000.00 after taxes (*i.e.,* the Lottery Winnings) and had intended to use the remaining Lottery Winnings to fund her amended chapter 13 plan. (*See id.* at 6-7.)  The Debtor then testified that she instead used the Lottery Winnings to purchase a used truck for $10,000.00, gave her sister an unknown amount of money, gave her mother the amount of $2,500.00 and took a Carnival Cruise to the Bahamas.  (*See id.* at 7-8.)  Additionally, the Debtor testified that she used the remaining money for personal living expenses because she was sick and out of work without pay.  (*See id.* at 8-9.)  The Debtor did not tell the Chapter 7 Trustee about the Stock.  (*See* Second Transcript.)

### III.    THE COMPLAINT

The Complaint is in three counts.  All three counts seek to have the Debtor's discharge denied pursuant to 11 U.S.C. § 727(a).  The First Count of the Complaint (the "First Count") seeks to deny the Debtor a discharge pursuant to 11 U.S.C. § 727(a)(2) based upon the Debtor's dissipation of postpetition income (*i.e.,* the Lottery Winnings) alleged to be property of the estate. The Second Count of the Complaint (the "Second Count") and Third Count of the Complaint (the "Third Count") seek to deny the Debtor a discharge under 11 U.S.C. § 727(a)(4)(A).  The Second Count alleges in relevant part: "[B]y giving sworn testimony at the Chapter 13 . . . Meeting during which she stated that she purchased [the Stock with] $12,000.00 . . . [of the] Lottery Winnings, the Debtor knowingly and fraudulently in, or in connection with the above captioned bankruptcy case,

made a false oath or account." (A.P. Doc. I.D. No. 1 ¶ 55.) The Third Count alleges in relevant part: "[B]y giving sworn testimony at the Chapter 7 . . . Meeting during which she failed to disclose the purchase of the . . . Stock to . . . [the Chapter 7 Trustee], the Debtor knowingly and fraudulently in, or in connection with the above captioned bankruptcy case, made a false oath or account." (*Id.* ¶ 59.)

## IV.     DEFAULT JUDGMENT STANDARD

A court may enter default judgment against a party when that party has failed to plead or otherwise defend his/her/its side of the case. That principle is governed by Rule 55 of the Federal Rules of Civil Procedure, made applicable herein by Rule 7055 of the Federal Rules of Bankruptcy Procedure. A debtor who is named as a defendant in an adversary proceeding with respect to matters relating to discharge is always deemed to have appeared in the adversary proceeding for purposes of Rule 55(b)(2). *See Katz v. Araujo* (*In re Araujo*), 292 B.R. 19, 22 (Bankr. D. Conn. 2003) (revocation of discharge by default judgment).

Entry of default does not automatically lead to entry of default judgment by the court. *Valley Oak Credit Union v. Villegas* (*In re Villegas*), 132 B.R. 742, 746 (B.A.P. 9th Cir. 1991) ("[E]ntry of default does not automatically entitle the nondefaulting party to entry of a default judgment regardless of the fact that the effect of entry of a default is to deem allegations admitted."). Rather, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A C. A. Wright, A. R. Miller & M. K. Kane, *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998). *See also Talbert v. City Mortgage Servs. (In re Talbert)*, 268 B.R. 811, 813 n.2 (Bankr. W.D. Mich. 2001), *subsequently aff'd*, 344 F.3d 555 (6th Cir. 2003) (stating that the "court may not grant the plaintiff

relief which is not supported by the law simply because the defendant has not opposed the adversary proceeding."); *Miller v. Kasden (In re Kasden)*, 209 B.R. 236, 238 (B.A.P. 8th Cir. 1997), *appeal dismissed*, 141 F.3d 1288 (8th Cir. 1998) ("[A] default judgment may not be entered on a complaint that fails to support the claim for relief and on appeal, a defaulted defendant may always challenge the legal sufficiency of the complaint allegations."). Moreover, the court has the discretion in each case to determine whether entry of default judgment is proper and "may conduct a hearing requiring some proof [from the plaintiff] of the facts that must be established in order to determine [the debtor's] liability." *Citibank USA, N.A. v. Spring* (*In re Spring*), No. 04-3007, 2005 WL 588776, at *2 (Bankr. D. Conn. Mar. 7, 2005) (internal quotation marks omitted). At the court's discretion, such proof may be made by affidavit. *American Express Centurion Bank v. Truong* (*In re Truong*), 271 B.R. 738, 742 (Bankr. D. Conn. 2002).

The plaintiff must demonstrate a *prima facie* case by competent evidence in order to obtain a default judgment. *See In re Spring*, 2005 WL 588776, at *2. *See also Oceanic Trading Corp. v. Vessel Diana*, 423 F.2d 1, 14 (2d Cir. 1970) ("Unless there are very unusual circumstances to justify it," default judgment must be supported by admissible evidence.). The plaintiff has demonstrated a *prima facie* case when "a factfinder could reasonably find every element that the plaintiff must ultimately prove to prevail in the action." *Fisher v. Vassar College*, 114 F.3d 1332, 1336 (2d Cir. 1997) (*en banc*), *cert. denied*, 522 U.S. 1075 and *reh'g denied*, 523 U.S. 1041 (1998) (*abrogated on other grounds by Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)).

**V.** **FIRST COUNT**

    **A.** **Applicable Law**

        **1.** **Bankruptcy Code § 727(a)(2)(B)**

> Appreciative that denial of a debtor's discharge "imposes an extreme penalty for wrongdoing," the United States Court of Appeals for the Second Circuit in *In re Chalasani*, 92 F.3d 1300, 1310 (2d Cir. 1996), has instructed that Section 727 "must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'" *Id.* Nevertheless, the relief of a bankruptcy discharge is not an absolute right, but rather, a privilege accorded honest debtors who provide full and honest disclosure to creditors and otherwise satisfy bankruptcy statutory obligations.

*Casa Investments Co. v. Brenes* (*In re Brenes*), 261 B.R. 322, 329 (Bankr. D. Conn. 2001) (Dabrowski, J.). Bankruptcy Code § 727(a) provides in relevant part as follows:

> (a) The court shall grant the debtor a discharge, unless—
>
> . . .
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> . . .
>
> (B) property of the estate, after the date of the filing of the petition . . . .

11 U.S.C.A. § 727(a) (West 2009). Section 727(a)(2)(B) is intended "to deny discharge to a debtor who fails to disclose transactions regarding his assets subsequent to filing his petition for bankruptcy." *United States Trustee v. Standiferd (In re Standiferd)*, No. 07-1076, 2008 WL 5273690, at *8 (Bankr. D.N.M. Dec. 17, 2008) (citation and internal quotation marks omitted). To prevail under the provision, the plaintiff must prove that (1) the debtor, (2) transferred or concealed, (3) property of the estate, (4) with the intent to hinder, delay or defraud a creditor, (5) after the filing of the petition. *See Poliquin v. Cox (In re Cox)*, No. 06-1045, 2009 WL 57523, at *4 (Bankr. D. N.H. Jan. 6, 2009); *Noland v. Johnson (In re Johnson)*, 387 B.R. 728, 749 (Bankr. S.D. Ohio 2008);

*Colonial Bank v. Johnson (In re Johnson)*, 301 B.R. 590, 596 (Bankr. N.D. Ala. 2003). The plaintiff "bears the ultimate burden of proving, by a preponderance of the evidence, the essential elements of an alleged objection to discharge." *Cadlerock Joint Venture II, L.P. v. Beaudoin (In re Beaudoin)*, No. 03-2018, 2007 WL 1020787, at *5 (Bankr. D. Conn. Mar. 30, 2007) (Krechevsky, J.), *subsequently aff'd,* 388 B.R. 6 (D. Conn. 2008) (citation and internal quotation marks omitted). *Cf.* Fed. R. Bankr. P. 4005. However, if the Plaintiff establishes a *prima facie* case under Section 727(a)(2)(B), then the burden shifts to the Debtor to refute the evidence. *In re Beaudoin*, *supra* at *5. *See also Clark v. Hammeken* (*In re Hammeken*), 316 B.R. 723, 728 (Bankr. D. Ariz. 2004). Section 727(a)(2)(B) requires a showing of actual intent to hinder, delay or defraud; a showing of constructive intent is insufficient. *Harker v. West (In re West)*, 328 B.R. 736, 752 (Bankr. S.D. Ohio 2004). Because a debtor ordinarily will not admit to intentionally hindering, delaying or defrauding creditors, "[f]raudulent intent may be inferred based upon the surrounding facts and circumstances [and t]he debtor's course of conduct is relevant to this inquiry." *In re Standiferd*, 2008 WL 5273690, at *8 (citations omitted). *See also In re Johnson*, 301 B.R. at 597.

### 2. **Bankruptcy Code §§ 541(a) and 1306(a)**

Except with respect to Section 541(a)(7) (discussed below) and with certain other exceptions not relevant here, only prepetition property interests of the debtor become "property of the estate" pursuant to Bankruptcy Code § 541(a). *See* 11 U.S.C.A. § 541(a) (West 2009) ("The commencement of a case under . . . this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: (1) . . . all legal or equitable interests of the debtor in property *as of the commencement of the case*." (emphasis added)). However, in a chapter 13 case, "[p]roperty of the estate includes, in addition to the property specified in section 541 of this title–

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 . . . of this title . . . ." 11 U.S.C.A. § 1306(a) (West 2009).

### 3. __Bankruptcy Code § 348(f)__

Bankruptcy Code § 348(f) adds to the analysis by providing in relevant part as follows:

> (f) (1)  Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—
>   (A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion;
>    . . .
>
>   (2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion.

11 U.S.C.A. § 348(f) (West 2009).  Pursuant to the 1994 Act, Section 348(f) was added to "clarify the Code to resolve a split in the case of law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7."  140 Cong. Rec. H10752-01, H10770, 1994 WL 545773 (daily ed. Oct. 4, 1994).  *See In re Baker*, 154 F.3d 534.[7]  Section 348(f)(1)(A) overruled

---

[7] In *Baker*, the bankruptcy court concluded that where post-petition earnings were used prior to conversion in "blatant violation of Chapter 13 law," such did not violate Section 727(a)(2)(B) because such earnings were never property of the chapter 7 estate, and granted a discharge. *In re Baker*, 154 F.3d at 536-37. However, the District Court's disagreement on the "property of the estate" issue led to reversal and remand. Ultimately, the Fifth Circuit affirmed the bankruptcy court's subsequent denial of discharge on remand noting the case had been commenced before Congress amended the Bankruptcy Code by the 1994 Act, which added Section 348(f) to the Bankruptcy Code. The Court of Appeals determined that the 1994 Act (including Section 348(f)) could not be applied, because "the amendments made by [that] Act shall not apply with respect to cases commenced under title 11 of the United States Code before the date of the enactment [, October 22, 1994] . . . ." *In re Baker*, 154 F.3d at 536 n.2 (citation and internal quotation marks omitted).

prior holdings where the court found postpetition earnings obtained pre-conversion to be property of the estate. 140 Cong. Rec. at H10771.

Section 348(f)(1)(A) adopts the reasoning that allowing postpetition property to be part of the estate upon conversion would deter incentive toward chapter 13 filing and would be inconsistent with the Bankruptcy Code's goal to encourage repayment plans instead of liquidation. *See* 140 Cong. Rec. at H10770. *See also Bobroff v. Continental Bank* (*In re Bobroff*), 766 F.2d 797, 803 (3d Cir. 1985). The provision "establishes that property acquired after the Chapter 13 filing and before discharge under Chapter 7 is not part of the converted estate." *Stamm v. Morton (In re Stamm)*, 222 F.3d 216, 218 (5th Cir. 2000) (concluding that postpetition earnings earned prior to conversion are not property of the estate).[8] Otherwise, upon conversion, "which can occur involuntarily," the debtor may unexpectedly lose postpetition property. 140 Cong. Rec. at H10771. With certain exceptions not relevant here, only where the debtor converts the case to chapter 7 in bad faith does property of the estate include property acquired postpetition. *See* 11 U.S.C.A. § 348(f)(2). Thus, "[Section 348(f)(2)] gives the court discretion, in a case in which the debtor has abused the right to

---

[8]     *Collier on Bankruptcy* substantially concurs with the foregoing and states as follows:

> Under section 348(f), it is clear that, in most cases, the property that came into the estate only because of section 1306(a) is not included in the estate in the converted case. Instead, the property of the estate in the chapter 7 case is that property which was property of the estate as of the filing of the original chapter 13 petition, to the extent such property still remains in the debtor's possession or control on the date of conversion. Thus, property the debtor acquired during the chapter 13 case would not become property of the estate in the chapter 7 case after conversion. If the trustee is holding any such property at the time the case is converted, that property should ordinarily be returned to the debtor.

8 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 1306.04, at 1306-8 (15 ed. rev. 2006).

convert and converted in bad faith, to order that all property held at the time of conversion shall constitute property of the estate in the converted case." 140 Cong. Rec. at H10771.

**B.     Analysis**

For the reasons set forth below, the court concludes that the UST has not satisfied the "property of the estate" requirement of Section 727(a)(2)(B). Accordingly, the First Count should be dismissed for failure to state a claim upon which relief can be granted.

The UST contends that the Debtor should be denied a discharge pursuant to Section 727(a)(2)(B) for dissipating the Lottery Winnings which the UST contends to be "property of the estate" within the purview of Section 727(a)(2)(B). As noted above, Section 727(a)(2)(B) denies a discharge when "property of the estate" is wrongfully transferred, removed, mutilated or concealed with the requisite intent. *See* 11 U.S.C. § 727(a)(2)(B). The question then before this court is whether property which was "property of the estate" only pursuant to Section 1306 is "property of the estate" within the purview of Section 727(a)(2)(B) in the context of a case involuntarily converted from chapter 13 to chapter 7.

The problem with the UST's argument that the Lottery Winnings are "property of the estate" within the purview of Section 727(a)(2)(B) is that the UST relies entirely on Sections 541 and 1306 and (except to the narrow extent discussed below) ignores Section 348(f).[9] "[I]n interpreting the Bankruptcy Code, the Supreme Court has . . . preferr[ed] . . . to take a broader, contextual view

---

    9       The UST also relies on Section 541(a)(7) which states in relevant part: "an estate is comprised of . . . (7) Any interest in property that the estate acquires after the commencement of the case." 11 U.S.C.A. § 541(a)(7) (West 2009). The postpetition Lottery Winnings became part of the chapter 13 estate. However, the UST's Section 541(a)(7) argument ignores Section 348(f)(1)(A). The vesting of the Lottery Winnings in the estate, pursuant to Sections 541(a)(7) and 1306(a), was rescinded on conversion pursuant to Section 348(f)(1)(A).

. . . urging courts to 'not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.'" *Price v. Delaware State Police Fed. Credit Union* (*In re Price*), 370 F.3d 362, 369 (3d Cir. 2004) (*quoting Kelly v. Robinson*, 479 U.S. 36, 43 (1986)). "As the Supreme Court has often noted, '[s]tatutory construction [ ] is a holistic endeavor,' and this is especially true of the Bankruptcy Code." *Official Committee of Unsecured Creditors v. Chinery (In re Cybergenics Corp.)*, 330 F.3d 548, 559 (3d Cir.), *cert. dismissed*, 540 U.S. 1002 (2003) (*quoting United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371(1988)). *See also Official Committee of Unsecured Creditors v. Pardee* (*In re Stanwich Fin. Servs. Corp.*), 288 B.R. 24, 26 (Bankr. D. Conn. 2002) (Shiff, J.) (finding that a "narrow reading" of a Bankruptcy Code provision would "ignore[] Second Circuit precedent and upset[] the equitable balance struck by a holistic reading of the bankruptcy code."). Accordingly, determining what is "property of the estate" within the purview of Section 727(a)(2)(B) cannot be done by reading Section 727(a)(2)(B) in a vacuum, but instead must be undertaken such that the meaning is compatible with the rest of the Bankruptcy Code, including Section 348(f)(1)(A). *See In re McCann*, 202 B.R. 824, 829 (Bankr. N.D.N.Y. 1996) ("[T]he various provisions of the Bankruptcy Code do not exist in a vacuum and thus a holistic approach must be taken when various provisions of the Code interact.").

It is undisputed that the Lottery Winnings were "property of the estate" during the chapter 13 case pursuant to Section 1306(a). Stripped to the essentials, the UST's argument is that "property of the estate" within the purview of Section 727(a)(2)(B) should be determined as of the time of the alleged asset dissipation (*i.e.,* during the chapter 13 case when the Lottery Winnings were "property of the estate" pursuant to Section 1306). However, that argument is inconsistent with the "holistic

approach" because it ignores Section 348(f)(1)(A) and its purpose. *See In re Pearson*, 214 B.R. 156, 164 (Bankr. N.D. Ohio 1997) ("The general purpose of [Section] 348(f) was to equalize the treatment a debtor would receive under a Chapter 13 case that converted to a Chapter 7 case with the treatment the debtor would receive if . . . [the debtor] filed a Chapter 7 originally."). "Congress intended to . . . plac[e debtors in a case converted from chapter 13 to chapter 7] in the same economic position they would have occupied if they had filed chapter 7 originally." *Wyss v. Fobber (In re Fobber),* 256 B.R. 268, 277-78 (Bankr. E.D. Tenn. 2000). *Accord In re Brinkley,* 323 B.R. 685, 691 (Bankr. W.D. Ark. 2005).[10]

If this case had been a chapter 7 case from the beginning and the Debtor had acquired the Lottery Winnings, the Debtor's dissipation of them would have resulted not in denial of discharge pursuant to Section 727(a)(2)(B) but, rather, dismissal of the case pursuant to Section 707. *See, e.g., In re Vogeler,* 393 B.R. 240 (Bankr. D. Kan. 2008) (case dismissed where chapter 7 debtor dissipated postpetition lottery earnings without addressing his prepetition debt). The court concludes that a proper construction of Section 727(a)(2)(B) requires the same result here.[11]

---

[10] The court does not read *In re Standiferd*, 2008 WL 5276390, to be inconsistent with the disposition here. In *Standiferd*, the court found that the case had been converted in bad faith and that Section 348(f)(2) applied. Moreover, the *Standiferd* court held that the debtors' preconversion disposition of the subject funds did not take such funds outside the purview of Section 727(a)(2)(B). *See Standiferd, supra* at *6-*9. However, to the extent that *Standiferd* is inconsistent with the court's disposition here, the court respectfully disagrees.

[11] In this "no asset" case, the choice to dismiss the case is clear. However, in a case where there might be some dividend, the chapter 7 trustee would be put to a choice: (1) dismiss the case and leave the creditors to fend for themselves; or (2) administer the case for the benefit of the creditors and permit the debtor to receive the discharge. However, that choice is presented in the analogous "straight" chapter 7 case (i.e., not converted) as well. *Cf. In re Vogeler*, 393 B.R. 240. The court expresses no opinion as to whether the remedy of dismissal remains available in this case as of this date or whether some form of prejudice may attach to such dismissal (if dismissal still remains available). *Cf. In re Standiferd*, 2008 WL 5273690, at *11.

Moreover, to the extent that Section 727(a)(2)(B) is ambiguous on the relevant point, that ambiguity should be resolved in the Debtor's favor. *See In re Chalasani,* 92 F.3d at 1310 (ambiguities in Section 727 must be construed liberally in favor of the debtor).[12]

The UST contends in the alternative that the Debtor's discharge should be denied by resort to Section 348(f)(2). Section 348(f)(2) states, "[i]f the *debtor* converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion." 11 U.S.C.A. § 348(f)(2) (West 2009) (emphasis added). The UST overlooks the plain language of the statute, which clearly states that the *debtor* must have converted the case, not a third party (i.e., the conversion must be voluntary, not involuntary). In the present case, the Debtor did not convert the case to chapter 7. Rather, the Chapter 13 Trustee converted the case to chapter 7. Consequently, Section 348(f)(2) does not apply to the present situation. *Cf. In re Standiferd*, *supra* at *6 (voluntary conversion). Any other interpretation (or extension of Section 348(f)(2) to involuntary conversions by judicial fiat) is inconsistent with the plain language of the statute.

---

[12] The court has disposed of the narrow issue of what "property of the estate" means within the purview of Section 727(a)(2)(B) in a converted case. It is important to note what the court is *not* saying here. The court is not laying down a general rule that a chapter 7 discharge cannot be denied in a converted case as a result of misconduct by the debtor during the chapter 13 phase of the case. *Cf. In re Standiferd*, 2008 WL 5273690, at *7 (The court "finds that 11 U.S.C. § 348 does not prevent a trustee from seeking to deny the Defendants's discharge under 11 U.S.C. § 727 in a converted Chapter 7 proceeding based on actions taken by the Defendants while their case was pending under Chapter 13.") Also, the court is not saying that a postpetition-acquired asset dissipated during the chapter 13 phase of the case is not "property of the estate" under Section 727(a)(2)(B) simply because it was dissipated before conversion and arguably would not remain in the "possession or . . . control" of the debtor at conversion within the purview of Section 348(f)(1). *Cf. In re Standiferd, supra* at *9; *In re Fobber*, 256 B.R. at 276.

Accordingly, the First Count does not state a claim upon which relief can be granted and therefore shall be dismissed.

## VI. SECOND COUNT AND THIRD COUNT

### A. Applicable Law

Bankruptcy Code § 727(a)(4) provides in relevant part:

(a) The court shall grant the debtor a discharge, unless—
. . .
(4) the debtor knowingly and fraudulently, in or in connection with the case—
(A) made a false oath or account . . . .

11 U.S.C.A. § 727(a)(4)(A) (West 2009). In order to deny discharge under Section 727(a)(4)(A), the plaintiff must establish by a preponderance of the evidence that: (1) the debtor made the statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the statement was made with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Brenes*, 261 B.R. at 329, 334.[13] Omissions as well as affirmative misstatements qualify as false statements for Section 727(a)(4)(A) purposes. *Beaubouef v. Beaubouef* (*In re Beaubouef*), 966 F.2d 174, 178 (5th Cir.1992).

A statement is deemed to be made with knowledge of its falsity if it was known by the debtor to be false or if it was made with reckless disregard for the truth. *D.A.N. Joint Venture, L.P. v. Cacioli* (*In re Cacioli*), 285 B.R. 778, 784 (Bankr. D. Conn. 2002) (Dabrowski, J.), *aff'd*, 332 B.R. 514 (D. Conn. 2005), *aff'd*, 463 F.3d 229 (2d Cir. 2006). Since a plaintiff rarely can produce direct

---

[13] With respect to materiality to the bankruptcy case, this court accepts the following formulation: "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik v. Moorefield* (*In re Chalik*), 748 F.2d 616, 618 (11th Cir. 1984).

evidence of fraudulent intent, a court may infer fraudulent intent from circumstantial evidence. *Neugebauer v. Senese* (*In re Senese*), 245 B.R. 565, 575 (Bankr. N.D. Ill. 2000). "[A] court may infer fraudulent intent under Code § 727(a)(4)(A) from a debtor's reckless indifference to or cavalier disregard of the truth." *Montey Corp. v. Maletta (In re Maletta)*, 159 B.R. 108, 112 (Bankr. D. Conn. 1993) (Shiff, J.) (citation omitted). If persuasive evidence of a false statement under oath has been presented by a party, the burden shifts to the debtor to prove that the statement was not "intentionally false." *Id*. *See also In re Brenes*, 261 B.R. at 334. Fraudulent intent then may be inferred if the false statement is not satisfactorily explained. *In re Maletta, supra* at 112.

### B. Analysis

The Second Count alleges that the Debtor made a material misstatement to the Chapter 13 Trustee when the Debtor testified under oath at the Chapter 13 Meeting to the effect that she paid $12,000.00 for the Stock when she allegedly paid only $5,000.00 for the Stock. To make out her *prima facie* case on the Second Count, counsel for the UST avers in the Affidavit: "*Upon information and belief*, the Debtor paid the sum of $5,000.00 for the . . . Stock. *See* Savings Account Statement at April 16, 2007." (Affidavit ¶ 24 (emphasis added).)[14] If, on the evidence now available, the UST is able to make the allegation in the Affidavit only on "information and belief," then the court does not deem it appropriate to conclude that the same evidence comprises a *prima facie* case.

The Third Count alleges that the Debtor made a material omission when she failed to tell the Chapter 7 Trustee about the Stock at the Chapter 7 Meeting. However, the Debtor earlier had

---

[14] The referenced statement shows only an unexplained $5,000.00 withdrawal on April 16, 2007. The court notes that the Stock certificate (a copy of which is in the record) also is dated April 16, 2007.

advised the Chapter 13 Trustee of the Stock. Based on this record, the court cannot conclude that the UST has made out a *prima facie* case on the Third Count.

## VII. CONCLUSION

For the above reasons, the First Count of the complaint shall be and hereby is dismissed. A separate order shall issue scheduling a status conference to discuss "next steps" with respect to the remainder of the Complaint and this chapter 7 case.

It is **SO ORDERED.**

Dated: February 2, 2009   BY THE COURT

*Lorraine Murphy Weil*
Lorraine Murphy Weil
United States Bankruptcy Judge